# IN THE SUPREME COURT OF IOWA

No. 11–0877

Filed November 2, 2012

**LEONARD JACK,**

Appellant,

vs.

**P AND A FARMS, LTD.,** d/b/a
**CROOKED CREEK SHOOTING
PRESERVE,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Washington County, Joel D. Yates, Judge.

Plaintiff seeks further review of court of appeals decision affirming district court's entry of default judgment when he failed to personally appear for trial but his counsel was present to proceed on his behalf. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

James K. Weston II of Tom Riley Law Firm, Iowa City, for appellant.

Heather L. Carlson of McDonald, Woodward & Carlson, P.C., Davenport, for appellee.

**ZAGER, Justice**.

In this case we are called on to decide whether a trial court's entry of a default judgment under Iowa Rule of Civil Procedure 1.971(3) is justified when a party fails to appear personally for trial but the party's attorney is present and able to proceed in the client's absence. The court of appeals affirmed the district court's entry of a default judgment due to the plaintiff's failure to appear personally at the time of his scheduled trial. We granted further review. We now vacate the opinion of the court of appeals, reverse the judgment of the district court, and remand for trial.

### I. Factual and Procedural Background.

The relevant facts in this case are undisputed. In December 2005, Leonard Jack was an employee of P and A Farms, Ltd., doing business as Crooked Creek Shooting Preserve (Crooked Creek). Crooked Creek is a game preserve located in Washington County, Iowa, and its business activities include raising mallard ducks used for training hunting dogs and for human consumption. As an employee of Crooked Creek, Jack's responsibilities included caring for the ducks, feeding the ducks, maintaining the duck pens, and cleaning ducks for customers.

Crooked Creek housed approximately 3400 ducks in a 100 foot by 200 foot pen which was exposed to the elements but covered by a net. On December 20, 2005, the pen was covered in snow and ice. Jack slipped on the ice and fell while carrying two five-gallon buckets of grain. As a result, he sustained a shoulder injury. Jack received extensive treatment for the injury including surgery at the University of Iowa Hospitals and Clinics. On May 24, 2007, Jack filed a petition at law and jury demand in the Washington County District Court alleging medical

expenses of approximately $47,000.[1] He also alleged that his injury occurred within the course and scope of his employment and that at the time of his injury Crooked Creek did not have workers' compensation liability insurance as required by law. Therefore, under Iowa Code section 87.21 (2005), it was presumed that his injuries were the direct result of, and grew out of, the negligence of Crooked Creek and that such negligence was the proximate cause of his injuries. Jack alleged damages for past and future medical expenses, past and future lost wages, past and future physical pain and suffering, and past and future loss of full body.

Trial was originally set for April 1, 2008. On January 25, 2008, Jack's counsel served requests for admissions on Crooked Creek, which did not timely respond.[2] However, on February 8, 2008, counsel for Crooked Creek filed a motion to withdraw from representation and a motion to continue. These resisted motions were granted by the court, which set a new trial date for December 16, 2008. New counsel for Crooked Creek did not file an appearance until October 24, 2008—over seven months later. Various motions were subsequently ruled on by the court. On November 7, 2008, the court entered an order denying Crooked Creek's motion to continue the trial and ordering Jack to make himself available for deposition. The court granted Crooked Creek's motion to file untimely responses to the January 25 request for admissions and ordered the responses be filed by November 18. On

---

[1]The amount incurred for medical expenses reflected in Jack's request for admissions and in his appellate brief is $44,697.72. Therefore, we will assume that $44,697.72 is the amount of medical expenses Jack seeks to recover.

[2]Pursuant to Iowa Rule of Civil Procedure 1.510(2), the matters upon which Jack requested admissions were deemed admitted when Crooked Creek failed to respond within thirty days.

November 20, Jack filed a motion to reconsider the district court's order requiring him to make himself available for deposition in Washington County, Iowa, by December 1. Therein Jack asserted that he had recently started a new job in Idaho and traveling to Iowa for both the December 1 deposition and the December 16 trial would result in him losing his job.

On November 25, 2008, Jack filed a motion to remove the case from the operation of Iowa Rule of Civil Procedure 1.944.[3] The motion indicated that counsel for both parties agreed a continuance would be in the interest of justice. This motion was granted, and the trial in this matter was continued until June 9, 2009.

On June 1, 2009, Crooked Creek filed an application to serve responses to requests for admissions. Attached to that motion were responses denying six of the requests in whole or in part. The court granted Crooked Creek's application upon finding that Jack would not be unfairly prejudiced. Trial did not take place as scheduled on June 9, 2009, and the trial was continued and rescheduled no fewer than four times at the request of each of the parties. By order entered June 24, 2010, jury trial was scheduled to begin on May 3, 2011.

On May 3, 2011, Jack failed to appear personally for trial. After the jury was impaneled, a hearing was held outside the presence of the jury. Jack's counsel informed the court that it was his understanding Jack, who had since moved to Idaho, was absent because he was

---

[3]Iowa Rule of Civil Procedure 1.944 governs dismissal for want of prosecution. Subsection 2 states, in part, "All cases at law or in equity where the petition has been filed more than one year prior to July 15 of any year shall be tried prior to January 1 of the next succeeding year." Iowa R. Civ. P. 1.944(2).

"stranded." He also indicated he had notified Jack of the trial date by letter on June 24, 2010, the same day the trial date was scheduled.

Jack's counsel requested a continuance, and Crooked Creek moved to dismiss. After the court denied the motion to continue, Jack's counsel resisted the dismissal and argued in the alternative that based on the statutory presumptions contained in Iowa Code section 87.21, and the admissions made by Crooked Creek, Jack had already made a prima facie case of negligence. Therefore, as his attorney, he should be allowed to proceed to trial without Jack being personally present to testify. He also requested the opportunity to submit Jack's deposition testimony in lieu of his trial testimony.

The district court granted Crooked Creek's motion to dismiss and entered a ruling stating:

> This case was scheduled for a jury trial commencing at 9:00 a.m. on May 3, 2011. Counsel for the Plaintiff and the Defendant appeared; however, the Plaintiff failed to personally appear. Plaintiff's counsel made an oral motion to continue the trial to a later date. Defendant's counsel resisted the motion to continue and moved that the case be dismissed. The Court notes that this case has been on file since 2007, that this trial date has been set for almost a year, and that the Plaintiff received notice of the trial date. After considering the arguments of counsel, the Court finds that the Plaintiff's motion to continue the trial should be and is here by denied and that the Defendant[']s motion for dismissal should be and is hereby granted.

On May 12, Jack filed a resisted motion to enlarge or amend, requesting that the district court enter a ruling addressing his counsel's proposition to proceed to trial in Jack's absence. He also requested that the district court reconsider its denial of his motion for continuance. The court granted the motion to enlarge or amend and added the following language to its previous ruling:

> This lawsuit was commenced May 24th, 2007. Both parties were notified on June 24th, 2010 that the jury trial was scheduled to start at 9:30 a.m. on May 3rd, 2011.
>
> Plaintiff Leonard Jack failed to appear for his jury trial on May 3rd. Attorney for Jack orally asked the Court to continue the trial minutes before it was to start. Defendants resisted any continuance and were ready to proceed. The court finds that the attorney for Plaintiff failed to state any good cause for continuing the trial.
>
> Additionally, acting pursuant to Iowa Rule of Civil Pro[cedure] 1.971(3), the Court finds Leonard Jack to be in default when he failed to be present for trial.

On June 3, 2011, Jack filed a notice of appeal, and we transferred the case to the court of appeals. A majority of the three-judge panel of the court of appeals affirmed the holding that dismissal was appropriate under rule 1.971(3) and that Jack's absence prevented Crooked Creek from cross-examining him, which is essential to a fair trial. The majority also found that it was within the district court's discretion to decline to order a less drastic remedy. The dissenting judge wrote separately, concurring in part and dissenting in part. In her view, rule 1.971(3) did not require dismissal in a case such as this where a party was not personally present for trial, but his counsel appeared on his behalf and requested to proceed to trial.

## II. Standard of Review.

"A decision to grant or deny a motion for default judgment rests in the sound discretion of the trial court." *See Wilson v. Liberty Mut. Grp.*, 666 N.W.2d 163, 165 (Iowa 2003). Reversal is only warranted upon a finding that the court's discretion has been abused. *Id.* Similarly, we review a district court's decision to grant or deny a motion for continuance for abuse of discretion. *Hawkeye Bank & Trust, Nat'l Ass'n v. Baugh*, 463 N.W.2d 22, 26 (Iowa 1990). However, this case turns on the interpretation of Iowa Rule of Civil Procedure 1.971(3), and we review

the interpretation of our rules of civil procedure for correction of errors at law. *Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 66 (Iowa 2010); *see also Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 389 n.6 (Iowa 2012) ("When a discretionary decision by a trial court involves an erroneous interpretation of law, our review is for legal error.").

**III. Discussion.**

**A. Default Judgment Under Rule 1.971(3).** A default judgment is a judgment against the party who has failed to take the next step required in the progress of a lawsuit. *Kirby v. Holman*, 238 Iowa 355, 374, 25 N.W.2d 664, 674 (1947). Iowa Rule of Civil Procedure 1.971 governs default judgments and subsection 3 states, "A party shall be in default whenever that party . . . [f]ails to be present for trial." We do not have any cases interpreting the word "party" as it appears in rule 1.971(3) or indicating whether the rule permits a party's counsel to appear on behalf of a party who is not personally present.[4] Nor do we have any recent cases discussing the entry of default judgment against a party for failure to be present at trial.

"Our ultimate goal in construing statutes is to find the true intention of the legislature."[5] *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 571 (Iowa 2002). "We look to both the language and the

[4]An interpretation of Federal Rule of Civil Procedure 55 governing default judgments in federal court is not instructive in the case at bar. 28 U.S.C. § 1654 (2006) definitively provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Thus, § 1654 affirmatively resolves the issue of whether a party who does not personally appear for trial may proceed through counsel.

[5]We acknowledge that the Iowa Rules of Civil Procedure are promulgated by this court in consultation with the Iowa Supreme Court Advisory Committee on Rules of Civil Procedure. Nonetheless, we apply ordinary canons of statutory construction in interpreting these rules. *See City of Sioux City v. Freese*, 611 N.W.2d 777, 779 (Iowa 2000) ("[W]e interpret rules in the same manner we interpret statutes.").

purpose behind the statute." *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.*, 606 N.W.2d 359, 363 (Iowa 2000). We also consider relevant statutes together and try to harmonize them. [6] *Soward*, 650 N.W.2d at 571. "If the legislature has not defined words of a statute, we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *Id.*

Crooked Creek relies on an unreported court of appeals decision in which that court affirmed a default judgment against a plaintiff who was absent at the time designated for trial and after the jury had been impaneled. *Manguno v. Bowden*, No. 00–1646, 2002 WL 1840867, *1 (Iowa Ct. App. August 14, 2002). *Manguno* is distinguishable because the plaintiff was pro se, and accordingly, nobody was present to proceed in the plaintiff's absence. *Id.*; *see also Krugman v. Palmer Coll. of Chiropractic*, 422 N.W.2d 470, 473, 475 (Iowa 1988) (affirming entry of default judgment when the party, her experts, and her attorney failed to

---

[6]We note at the outset of our analysis that rule 1.404 governing appearances is inapplicable to the case at bar. Rule 1.404(2) states:

> The court shall have no power to treat an appearance as sufficient to delay or prevent a default or any other order which would be made in absence thereof, or of timely pleading. Notice and opportunity to respond to any motion for judgment under rule 1.973(2) shall be given to any party who has appeared.

Thus, at first blush, rule 1.404(2) seems to suggest that the appearance of an attorney on behalf of a party is insufficient to prevent an entry of default judgment justified under rule 1.971. However, the term "appearance" as it is used in rule 1.404(2) does not address the concept of an attorney showing up for trial on behalf of a party who is not physically present. Rather, rule 1.404(2) refers to the more legalistic definition of appearance in which an attorney clearly indicates to the court that he or she is the attorney "in charge of the case." *See* Iowa R. Civ. P. 1.404(1). Jack is not arguing that his attorney's formal "appearance" in this case by signing the petition prevented the court from entering a default judgment under rule 1.971(3). Rather, Jack is arguing that the district court erred in entering a default judgment under rule 1.971(3) because his attorney was "present for trial" on his behalf.

appear for depositions and trial); *Langner v. Mull*, 453 N.W.2d 644, 647–49 (Iowa Ct. App. 1990) (affirming entry of default judgment against pro se party who failed to appear for trial).

In its brief, Crooked Creek also cites *Hebert v. C.F. Bean Corp.*, a Louisiana court of appeals decision upholding the trial court's dismissal of the plaintiff's action where, as here, the plaintiff's counsel, but not the plaintiff, appeared for trial. 785 So. 2d 1029, 1031 (La. Ct. App. 2001). We are not persuaded that *Hebert* supports Crooked Creek's interpretation of rule 1.971(3). In that case, the court expressly rested its holding on the fact that "there [wa]s no evidence that Plaintiff's counsel was ready to proceed without his client. Therefore, the mere appearance of Plaintiff's counsel [wa]s not enough to defeat the dismissal . . . ." *Id.* Thus, the Louisiana court provided that dismissal of a plaintiff's action for failure to appear personally may be improper where, as here, the plaintiff's counsel appears and is ready to proceed on the client's behalf. *Id.*

Crooked Creek contends, essentially, that our rules of civil procedure always require a party to be personally present for trial and do not permit a party to proceed to trial through counsel. However, numerous cases demonstrate that the rules were intended to contemplate a variety of situations in which a party who is not personally present may, through counsel, proceed to a trial where substantial rights are adjudicated.

In *Vaux v. Hensal*, we held that the trial court properly entered a default judgment against a defendant who timely filed an answer but failed to appear for trial. 224 Iowa 1055, 1059, 277 N.W. 718, 720–21 (Iowa 1938). However, in that case "neither the defendant . . . nor his attorney appeared in court" on the day the case was assigned for trial.

*Id.* at 1056, 277 N.W. at 719. Under instruction of the court, the clerk of court telephoned the defendant's attorney and advised him that the case had been rescheduled for the following day. *Id.* Despite receipt of this message, the next day when trial was scheduled to begin, and after the jury had been impaneled, both the defendant and his attorney again failed to show up. *Id.* The plaintiff waived the jury, and the court "entered an order finding the defendant in default for want of appearance and proceeded to hear plaintiff's evidence." *Id.*

After the introduction of a portion of the plaintiff's evidence, the defendant's counsel appeared and requested "the default be set aside and that he be permitted to make his defense to the plaintiff's claim." *Id.* The court agreed, but the defendant's attorney declined to proceed when the court refused to acquiesce in his insistence upon a jury trial. *Id.* at 1056–57, 277 N.W. at 719. Thereafter, the plaintiff proceeded to introduce its evidence to the court, and the court entered a judgment against the defendant. *Id.* at 1057, 277 N.W. at 719. The defendant appealed alleging the court erred in entering the default for nonappearance. *Id.* at 1057, 277 N.W. at 719–20. On appeal we affirmed. *Id.* at 1059, 277 N.W. at 721. *Vaux* is instructive in that it demonstrates a district court's authority to sanction a party for failure to appear for trial. *Id.* at 1057, 277 N.W. at 720. Notably, however, even though the defendant was not personally present, the court gave the defendant's counsel the option to defend the case in the defendant's absence. *Id.* at 1056–57, 277 N.W. at 719.

In *Myers v. Emke,* an inmate filed a civil rights action against the state. 476 N.W.2d 84, 84 (Iowa 1991). Through counsel, the inmate filed a motion requesting the court enter an order allowing the plaintiff to be transported from prison for the trial. *Id.* The district court denied the

plaintiff's motion. *Id.* On appeal, we affirmed the holding that "[a]n inmate has no constitutional right to be produced as a witness in his own civil rights action." *Id.* at 85. We noted that the "plaintiff's civil action d[id] not present any problems that would prevent the trial court from adequately functioning and dispensing justice in plaintiff's absence." *Id.* Because the plaintiff's presence was not "reasonably necessary" the court "lack[ed] inherent power to order his presence." *Id.*

The holding in *Myers* rests largely upon the doctrine of separation of powers, and we discussed our reluctance to invade the province of the executive branch. *Id.* at 86. Nonetheless, the *Myers* case provides a discrete example of a situation in which a party has been not only permitted, but required, to advance his claim through counsel. *Id.*

In *Heck v. Anderson,* we said "[t]he necessity of the presence of a party at the trial of a civil action for damages against him is admittedly not absolute." 234 Iowa 379, 384, 12 N.W.2d 849, 851 (1944) (quoting *Hellberg v. Warner*, 48 N.E.2d 972, 975 (Ill. Ct. App. 1943) (applying Soldiers' and Sailors' Civil Relief Act of October of 1940)); *see also Jamison v. Knosby*, 423 N.W.2d 2, 4 (1988) (noting defendant did not appear personally at trial but his counsel appeared on his behalf); *Semler v. Oertwig*, 234 Iowa 233, 242, 12 N.W.2d 265, 270 (Iowa 1943) (noting that in some circumstances presence of a military serviceman at trial may be "unnecessary to an adequate protection of his rights"). This statement would be at odds with a default judgment rule that always required a party to appear personally at trial. Crooked Creek's interpretation of rule 1.971(3) is also at odds with numerous trial scenarios in which it is commonly understood that a party may advance claims through counsel without being personally present.

For instance, both postconviction relief proceedings and termination of parental rights proceedings are generally governed by the rules of civil procedure. *See* Iowa Code § 822.7 (stating the rules of civil procedure are applicable to postconviction relief proceedings); *In re Interest of B.G.C.*, 496 N.W.2d 239, 242 (Iowa 1992) ("Section 600A.7(1) provides that termination hearings shall be conducted in accordance with our rules of civil procedure."). Nonetheless, we have held that a postconviction relief applicant has no due process or statutory right to personally attend the postconviction relief trial. *See Webb v. State*, 555 N.W.2d 824, 827 (Iowa 1996).

Similarly, in *In re Interest of J.S.*, our court of appeals held that a parent's physical presence is not required at a termination of parental rights hearing when counsel is present on the parent's behalf. 470 N.W.2d 48, 52 (Iowa Ct. App. 1991); *cf. In re Interest of T.C.*, 492 N.W.2d 425, 428–29 (Iowa 1992) (finding father was not denied his due process rights at child-in-need-of-assistance (CINA) adjudicatory hearing due to fact that father was in county jail at time of service of notice and CINA proceedings and that it was unlikely that court would have entered order different from what it did had the father been present). In both of these situations, one of the parties is often incarcerated, and it is commonly understood that a party who appears through counsel will not be held to be in default.

Also, a rule that required a party to appear personally for trial would be inscrutable in its application to a party who is not a person but rather an entity. In *Hawkeye Bank & Trust*, we held that corporations in this state are generally required to appear *only* by lawyer. 463 N.W.2d at 25. If the corporation itself is required to be present for trial, it is wholly unclear which person or persons would be required to appear on the

corporation's behalf. Clearly, a corporation represented by counsel would not be considered to be in default where no employees, officers, or shareholders showed up for trial. *Cf. Kirk v. Madsen*, 240 Iowa 532, 534, 36 N.W.2d 757, 758 (Iowa 1949) ("All testimony is undisputed as [the defendant who owned the company . . .] was represented by counsel at the trial, failed to appear in person[,] and could not be found to be served with subpoena.").

Numerous state appellate courts that have considered the issue now before us have interpreted their respective rules of civil procedure to allow a party to proceed to trial through counsel without actually being personally present. *See, e.g., In re Interest of M.M.*, 708 So. 2d 990, 992 (Fla. Dist. Ct. App. 1998) (holding the entry of default judgment against parents in termination proceeding for failing to appear was improper because the parents appeared through their counsel); *Owen v. Healy*, 896 A.2d 965, 967–68 (Me. 2006) ("Evidence of a party's unexplained failure to appear in person . . . does not justify a default that avoids trial where, as here, the missing party is represented by counsel at the trial."); *Rocky Produce, Inc. v. Frontera*, 449 N.W.2d 916, 917 (Mich. Ct. App. 1989) (reversing default judgment based on civil defendant's failure to appear personally at trial because, "absent a subpoena or order from the court to appear, a defendant in a civil case is not required to appear in person for a scheduled trial"); *Croes v. Handlos*, 30 N.W.2d 471, 472 (Minn. 1948) ("Of course, a defendant may appear and answer personally, but he must do so either personally or by counsel."); *Ogawa v. Ogawa*, 221 P.3d 699, 707 (Nev. 2009) (where a party "appeared at the divorce hearing through counsel . . . the district court erred in entering the default against him"); *N.J. Div. of Youth & Family Servs. v. P.W.R.*, 983 A.2d 598, 600 (N.J. Super. Ct. App. Div. 2009) (holding that it was

improper for trial court to enter default against stepmother based on failure to appear personally at child abuse fact-finding hearing where her attorney appeared to represent her interests), *rev'd on other grounds*, 11 A.3d 844, 847 (N.J. 2011) (noting that lower appellate court "panel concluded, rightfully, that the default was improper"); *In re Brandon A.*, 769 A.2d 586, 589 (R.I. 2001) ("defin[ing] an appearance as [a] coming into court *as party* to a suit, either in person *or* by attorney" and holding that the "Family Court justice's entry of default against respondent who was represented by counsel was clearly erroneous" (citation and internal quotation marks omitted)); *LeBlanc v. LeBlanc*, 778 S.W.2d 865, 865 (Tex. 1989) (holding there was no default in divorce action because party who did not appear personally was represented by counsel at trial). While none of these jurisdictions have a default judgment provision identical to rule 1.971(3), we find this body of persuasive authority instructive.

The preceding precedents demonstrate that when a party *and* the party's representative fail to appear for trial, the decision to grant or deny a motion for default judgment under rule 1.971(3) rests within the sound discretion of the trial court. *See Wilson*, 666 N.W.2d at 165; *Krugman*, 422 N.W.2d at 473–74. However, we do not interpret rule 1.971(3) to permit the entry of a default judgment against a party who fails to appear personally for trial when the party's attorney is present and able to proceed in the party's absence. Unless subject to a subpoena or court order, a plaintiff in a civil trial is not obligated to take the stand. Thus, there is no reason why a plaintiff in a civil trial should be required to appear personally when his or her presence is not "reasonably necessary." *See Myers*, 476 N.W.2d at 85 (allowing civil trial to proceed through counsel where presence of incarcerated plaintiff was not

"reasonably necessary"); *see also Rollins v. Coggshall*, 29 Iowa 510, 511 (1870) ("A default can only be taken against one who has failed to comply with some rule or order of the court.").

Through counsel, Jack could have advanced his claim based entirely on admissions by Crooked Creek which were already in the record. *See White v. Walstrom*, 254 Iowa 646, 650, 118 N.W.2d 578, 581 (1962) ("[P]laintiff can make his whole case on defendant's deposition if he so desires. He could always prove his case by statements of defendant made out of court . . . ."). In this case, Jack would also have been entitled to rely on the presumptions contained in Iowa Code section 87.21 in the prosecution of his claim. Under these circumstances, Jack was able to take the next step required in the progress of the lawsuit, and thus, was not in default. *Kirby*, 238 Iowa at 374, 25 N.W.2d at 674.

It was well within the discretion of the district court to decline to grant a seventh continuance in a case that had been on file for over four years. *Hawkeye Bank & Trust*, 463 N.W.2d at 26 ("Given the broad discretion vested in district courts to grant or deny continuances, we will reverse only when that discretion is abused."). However, we find that the court's entry of a default judgment dismissing Jack's case was based on an erroneous interpretation of rule 1.971(3). We believe our interpretation of rule 1.971(3) is consistent with our general policy in this jurisdiction " 'to allow a determination of controversies on their merits rather than on the basis of nonprejudicial inadvertence or mistake.' " *Brandenburg v. Feterl Mfg. Co.*, 603 N.W.2d 580, 584 (Iowa 1999) (quoting *Whitehorn v. Lovik*, 398 N.W.2d 851, 853 (Iowa 1987)); *Paige v. City of Chariton*, 252 N.W.2d 433, 437 (Iowa 1977); *Wharff v. Iowa Methodist Hosp.*, 219 N.W.2d 18, 21 (Iowa 1974) ("The general policy in this jurisdiction has been to allow trial on the merits."); *Sawyer v.*

*Sawyer*, 261 Iowa 112, 117, 152 N.W.2d 605, 608 (1967) ("[T]rials upon the merits are favored and defaults avoided if fairly possible."); *see also McQuillen v. City of Sioux City*, 306 N.W.2d 789, 791 (Iowa 1981) ("[T]he drastic action of dismissal should not be ordered in the absence of willfulness, bad faith or fault.").

**B. Crooked Creek's Right to Cross-Examine Jack.** Crooked Creek concedes that Jack had made a prima facie case on his negligence claim but contends that it was entitled to rebut the presumption of negligence established under section 87.21 by cross-examining Jack at trial. The court of appeals "agree[d] with Crooked Creek that despite Jack's ability to establish a prima facie case under section 87.21, his absence precluded [Crooked Creek] from cross-examining him, which is essential to a fair trial." For this proposition, the court cited our decision in *Avery v. Harms Implement Co.*, which states, "While the scope of cross-examination is discretionary, the right to do so is absolute. It is a right essential to a fair trial." 270 N.W.2d 646, 650 (Iowa 1978).

However, in the second subsequent sentence in the *Avery* decision, we also stated, "Under our rules, cross-examination is limited to matters testified to in chief." *Id.* Because the proposition below was to proceed in Jack's absence, Jack would not have testified in his case-in-chief and would not have been subject to cross-examination. *See Heinz v. Heinz*, 653 N.W.2d 334, 342 (Iowa 2002) ("The purpose of cross-examination is to test the veracity of statements a witness made . . . ."). A party is not denied a fair trial by the denial of the opportunity to cross-examine a witness who does not give any testimony. The very definition of cross-examination requires that the witness first be examined on direct.

Crooked Creek cannot complain that it would have been deprived a fair trial because of the failure of one of the opposing parties' designated witnesses to appear for trial. Crooked Creek may have been entitled to *examine* Jack had they subpoenaed him in accordance with Iowa Rule of Civil Procedure 1.1701(1)(a)(3).[7] However, Crooked Creek did not subpoena Jack and was required to resort to other evidence to rebut the presumption of negligence arising under section 87.21.[8] If a party wishes to assure the availability of an opposing party to be called as a

---

[7]Because Jack is a party, rule 1.1701(4)(*d*)(1)(2), which permits the quashing or modification of a subpoena requiring a nonparty "to travel more than 50 miles from where that person resides," would have been inapplicable.

[8]Rule 1.707 governing notice for oral depositions demonstrates that if the drafters of rule 1.971(3) intended to allow a party to compel an opposing party to testify at trial without obtaining a subpoena, they certainly knew how to do so. Rule 1.707(4) provides:

> No subpoena is necessary to require the appearance of a party for a deposition. Service on the party or the party's attorney of record of notice of the taking of the deposition of the party or of an officer, partner or managing agent of any party who is not a natural person, as provided in rule 1.707(1), is sufficient to require the appearance of a deponent for the deposition.

The first sentence of rule 1.707(4) is similar to rule 1.971(3) in that the term "party" is undefined. However, unlike 1.971(3), it is clear from this rule that the party himself must personally appear, and the party's attorney cannot appear at depositions on his behalf.

Firstly, the rule implicitly distinguishes between the party and the party's attorney by stating service of notice "on the party or the party's attorney" of the "taking of the deposition of the party . . . is sufficient to require appearance." Iowa R. Civ. P. 1.707(4). By juxtaposing the phrase "[s]ervice on the party or the party's attorney" with the phrase "taking of the deposition of the party," the rule forecloses an interpretation that would permit a party's attorney to appear on his behalf for depositions. Instead, it is clear that the deposition of an opposing party himself may occur after he *or* his attorney is served with notice.

Secondly, common sense dictates that a party's attorney cannot appear on his or her behalf for a deposition and the party being deposed must personally appear. Unlike trial, the only thing that occurs at the deposition of a party is the giving of that party's testimony. Clearly, an attorney cannot testify on behalf of his or her client. However, as discussed above, there are numerous instances where it is understood that an attorney may advance a client's claims at trial notwithstanding the party's physical absence.

witness, or the availability of any witness for that matter, the appropriate procedure to compel the attendance of a witness must be employed.

## IV. Conclusion.

The district court did not abuse its discretion when it denied Jack's motion to continue the trial. However, the district court's decision to enter a default judgment against Jack rested on an erroneous interpretation of rule 1.971(3). Because rule 1.971(3) does not require a party to appear personally for trial, it was an abuse of discretion to enter a default judgment against Jack when his counsel was present and able to proceed to trial on his behalf.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**